## Urik Election

*Saul Chersky* and *Francis X. McCulloch*, for petitioner.

WEISS, J., January 2, 1952.—At the primary election held July 24, 1951, in the Borough of Springdale, instant petitioner received the nominations of both the Democratic and Republican Parties for the office of justice of the peace. The respective nominations were made as follows:

Andrew R. Urik (Dem.)

Andrew Urik (Rep.)

Petitioner failed to avail himself of the provisions of the Pennsylvania Election Code of 1937, namely section 1406, which in effect provides for a revision of the ballots to permit a cumulation of votes cast under one common name. After the general election in November, when the ballots in Springdale Borough were counted and returned by the election board, the vote certified for the respective nominees who were candidates for justice of the peace in the Borough of Springdale was as follows:

Republican Earl C. Shoop........763 votes
Republican Andrew Urik .........508 votes
Democrat Andrew R. Urik........760 votes
Democrat Robt. M. Thompson.....768 votes

The Election Board of Allegheny County under section 1406 of the Pennsylvania Election Code of June 3, 1937, P. L. 1333, determined that Andrew R. Urik and Andrew Urik were two different names and certified that Earl C. Shoop and Robt. M. Thompson were the two duly elected justices of the peace of the Borough of Springdale.

Andrew R. Urik then petitioned this court for a recount of the ballots cast in all four election districts of the Borough of Springdale. The recount was made and as a result the following votes were received by the respective candidates for justice of the peace:

Republican Earl C. Shoop........766 votes
Republican Andrew Urik..........502 votes
Democrat Andrew R. Urik........741 votes
Democrat Robert M. Thompson....750 votes

Petitioner thereafter filed a petition for a rule to show cause why the 741 votes he received under the name of Andrew R. Urik and the 502 votes he received under the name of Andrew Urik should not be cumulated and the name of Andrew R. Urik certified by the bureau of elections as one of the duly elected justices of the peace in the Borough of Springdale. It is the disposition of this petition that is now before this court.

### Questions of Law Involved

1. Is section 1406 of the Pennsylvania Election Code of June 3, 1937, P. L. 1333, constitutional?

2. Does section 1406 of the Pennsylvania Election Code of 1937, supra, permit the cumulation of the 741 votes cast for Andrew R. Urik and the 502 votes cast for Andrew Urik?

## Discussion

At the outset, it can be said that section 1406 of the Pennsylvania Election Code of 1937, P. L. 1333, 25 PS §3156, apparently controls the facts in the instant litigation. The act reads as follows:

"Any person who has been nominated at the primary election by more than one party for the same office under different names may, at any time not later than five (5) days after the certification by the county board of the votes cast at a primary election, present a petition to the court of common pleas of the proper county, praying for an order declaring such petitioner by his true name to be the person who was thus nominated by more than one party under different names. If the court shall determine that the different names so appearing on the return of the primary represent one and the same person, the court shall enter an order finding said fact and directing the county board to revise its return accordingly. Jurisdiction is hereby conferred upon the courts of common pleas to entertain such petitions and to make the orders provided herein. No such order shall be entered by any court, unless notice of the filing of said petition shall first have been given to the county board, and to all the other candidates who appear to have been nominated for the same office, in such manner as the court may, by its order, direct, which notice shall specify the time and place of the hearing on said petition. Upon the filing of any such petition, said court shall proceed to hear said matter without delay, having due regard to the proximity of the ensuing election. Immediately upon the entry of any order as aforesaid, a certified copy thereof shall be served on the county board, which shall correct and revise its returns accordingly. *No candidate for public office at any November election whose name, for any reason, is printed more than once for the same office on any ballot at any general, municipal or special*

*election, shall be entitled to have cumulated, either by the election officers, by the county board, or by any court, the votes cast after such different names."* (Italics supplied.)

Counsel for petitioner would deny the application of the act in the instant case, basing his denial on his contention that the above quoted section of the Election Code of 1937 is unconstitutional inasmuch as it is in violation of certain specific provisions of the Federal and Pennsylvania State Constitutions; viz., section (1) of the fifteenth amendment to the Federal Constitution, article I, sec. 5 of the Pennsylvania State Constitution, and article VIII, sec. 1, of the Pennsylvania State Constitution.

Section 1 of the fifteenth amendment to the Constitution of the United States provides as follows:

"The right of citizens of the United States to vote shall not be denied or abridged by the United States or by any State on account of race, color, or previous condition of servitude."

Article 1, section 5, of the Constitution of Pennsylvania provides as follows:

"Elections shall be free and equal; and no power, civil or military, shall at any time interfere to prevent the free exercise of the right of suffrage."

Article VIII, sec. 1, of the Constitution of Pennsylvania merely specifies the qualifications of electors and directs that all male electors, 21 years of age, possessing the specified qualifications, "shall be entitled to vote at all elections, subject however to such laws requiring and regulating the registration of electors as the general assembly may enact."

Of a certainty, the attacked section 1406 of the Election Code does not deny or abridge the right of any citizen of the United States to vote "on account of race, color, or previous condition of servitude". Even the brief for petitioner does not contend otherwise.

And is is equally clear that section 1406 of the Election Code could not possibly make an election otherwise than "free and equal", nor "prevent the free exercise of the right of suffrage", nor prohibit from voting any constitutionally qualified and properly registered elector, and thus be in violation of the above-quoted provisions of the Constitution of Pennsylvania. Section 1406 of the Election Code is merely *regulatory* in its purpose and effect. As such, it exemplifies the familiar and well established principle to the effect that *"reasonable regulation of elections is a proper function of the Pennsylvania legislature within its constitutional province"*.

In support of the contention of the unconstitutionality of section 1406, the brief for petitioner cites three Pennsylvania cases: viz., Seim's Appeal, 316 Pa. 225; Magazzu Election Case, 355 Pa. 196; Hunter's Appeal, 30 Berks 268. But, as we shall now show, none of these authorities actually sustains petitioner's contention.

In the Seim's case, the proceeding was not an appeal from a county board of elections, but was an election contest instituted by the required number of electors. Moreover, it was decided in 1934, prior to the enactment of the Pennsylvania Election Code of 1937, and consequently has no relevance whatever to petitioner's contention of unconstitutionality here—a matter with which the case was in no wise concerned.

The Magazzu case is likewise entirely irrelevant here. It merely held that a nominee of one party may also become the nominee of another party by "write-in" votes on the primary ballots of the other party.

The Hunter case affords no support for petitioner's contention of unconstitutionality because, as recognized by the same Court of Common Pleas of Berks County in Rodrian's Appeal, 32 Berks 161, the Hunter case did not actually hold section 1406 to be unconsti-

tutional. Rodrian's Appeal is practically upon all fours with the instant case now at bar. It was an appeal from a decision of the county board of elections and the question therein, as stated by the court on page 162, was "whether or not the votes cast for Peter Rodrian, who was a candidate upon the Socialist ticket, should have been credited to Peter J. Rodrian, who was a candidate on the Republican ticket", in an election where *two* school directors were to be elected. On the same page the court referred to the Hunter case and said this:

"While it is true that Shanaman, J., does say (in Hunter case) that the question involved is whether sec. 1406 of the Pennsylvania Election Code of 1937 (P. L. 1333) which provides, inter alia, that 'No candidate for public office at any November election whose name, for any reason, is printed more than once for the same office on any ballot at any general, municipal, or special election, shall be entitled to have cumulated, either by the election officers, by the county board or by any court, the votes cast after such different names', is unconstitutional, *the opinion does not go so far as to answer this affirmatively*". (Italics supplied.)

Furthermore, it is to be observed that in his opinion in the Hunter case, Judge Shanaman lifted the *last sentence* of section 1406 out of its context and considered it as if it stood alone. Thus, he violated the fundamental canon of statutory construction that requires not only the whole of section 1406, but also the whole statute, to be construed together *in their entirety* in discovery of the intention and purpose of the legislature. *That judicial compliance with this canon is especially necessitous where any part of a statute is attacked for unconstitutionality is, or should be self-evident.*

In respect to the application of section 1406 of the Pennsylvania Election Code, supra, it is the studied

opinion of this court that the law is clear, concise and positive in its mandate to this court when it states that ". . . *no candidate for public office at any November election whose name . . . is printed more than once for the same office on any ballot at any general, municipal or special election, shall be entitled to have cumulated . . . the votes cast after such different names*". (Italics supplied.) The very wording of the act leaves this court no recourse other than to deny petitioner the right to cumulate the votes cast under the name of Andrew R. Urik and Andrew Urik.

Further support for this position may be found in Johnston's The Voters' Guide, edited by J. Oscar Emrich, wherein it is said at page 17:

". . . County Return Board may hear testimony as to the identity of the candidate for whom votes have been cast under different names by 'write-in', and upon proper evidence cumulate such votes. Appeal of Peitz, 98 Pitts. L. J. 39 (1950) ; Harer's Petition 49 D. & C. 344, (1943). However, a *distinction is made as to the cumulation of votes where the name of the candidate is printed more than once for the same office on the November ballot, in which case the candidate shall not be entitled to have cumulated either by the election officers, by the County Board of Elections or by any court the votes cast after such different names*". (Italics supplied.)

It is indeed unfortunate that petitioner did not avail himself of the protection provided for in section 1406 of the Election Code of 1937, supra, by filing a petition to cumulate votes prior to the November election. In the absence of such action upon the part of petitioner, we cannot in the better interests of justice shirk our duty to the people of this Commonwealth and permit petitioner to now cumulate the votes so cast. *The right to vote is the very cornerstone of democracy, and this right should be jealously protected by the courts by*

*uniformly administering the laws passed to protect this right. To permit the enforcement of the Election Code to depend upon the whim or caprice of the local courts would lead to endless confusion and would place the right to vote in jeopardy, and this cannot be done, therefore we must strictly construe the Election Code of 1937, supra, and deny petitioner the right to cumulate the votes in issue.*

It is, therefore, the conclusion of this court that the prayer of the petition be denied, the rule discharged and the petition dismissed.